UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| STANLEY GREEN, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | Civil Action No. 10-11959-DJC |
| PARTS DISTRIBUTION XPRESS, INC., DEALER TIRE, LLC, and CONTRACTOR MANAGEMENT SERVICES, | ) ) ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM AND ORDER**

**CASPER, J.** November 29, 2011

## I. Introduction

Plaintiff Stanley Green, a truck driver, brought this purported class action against Defendants Parts Distribution Xpress, Inc. ("PDX"), Dealer Tire, LLC ("Dealer Tire") and Contractor Management Services ("CMS"). The complaint alleges that PDX and Dealer Tire violated various federal and Massachusetts wage laws as well as the Massachusetts statute regarding unfair and deceptive business practices by misclassifying Green and others similarly situated as independent contractors rather than as employees and that CMS aided and abetted PDX and Dealer Tire's alleged violations by producing "independent contractor" forms that PDX and Dealer Tire required Green and others similarly situated to sign as a condition of employment. Green's complaint seeks damages from all Defendants and an injunction against CMS "prohibiting it from continuing to aid and abet delivery services companies in Massachusetts to violate state laws in their misclassifications of truck driver employees as independent contractors." (D. 14 at ¶ 31). CMS has

1

moved to dismiss the complaint to the extent it that contains claims against CMS. For the reasons discussed below, CMS's motion is DENIED.

**II.     Burden of Proof and Standard of Review**

To survive a motion to dismiss, a complaint "must 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests,' and allege 'a plausible entitlement to relief.'" Decotiis v. Whittemore, 635 F.3d 22, 29 (1st Cir. 2011) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 559 (2007)). The Court accepts non-conclusory factual allegations in the complaint as true, Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011), and "draw[s] all reasonable inferences in favor of the plaintiff[]." Gargano v. Liberty Int'l Underwriters, Inc., 572 F.3d 45, 48 (1st Cir. 2009). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (internal quotation marks and citations omitted).

**III.    Factual Allegations**

Dealer Tire is a wholesale tire distributor whose primary business is delivering tires to automotive dealerships. (D. 14 at ¶ 8). PDX supplies drivers to Dealer Tire and other wholesale automotive parts distributors to help those distributors transport their product to dealerships. (D. 14 at ¶ 8). Green worked for PDX and Dealer Tire as a driver from approximately 2005 to 2006, again from February 7, 2007 until January 4, 2008, and again from August 10, 2009 until October 21, 2009. (D. 14 at ¶ 9).

Green and others similarly situated were required, as a condition of their employment, to sign an "independent contractor" form contract supplied by CMS ("CMS form contract"), a Nevada

2

company that assists delivery service companies similar to PDX in their contractual relations with truck drivers. (D. 14 at ¶¶ 4, 22). The CMS form contract contained clauses wherein the signer agrees that he is an independent contractor, promises not to assert that he is an employee, consents to submit invoices for compensation resulting in payments not to the signer but to CMS as the signer's "collection agent," and agrees that any action brought against CMS will be brought in state or federal courts located in Nevada and any claims be submitted to arbitration in Las Vegas. (D. 14 at ¶ 22).[1]

Green signed the CMS form contract and was classified as an independent contractor while working for PDX and Dealer Tire. (D. 14 at ¶¶ 10, 22). Drivers who, like Green, were classified by PDX and Dealer Tire as independent contractors were assigned responsibilities identical to those assigned to individuals classified as employees, (D. 14 at ¶ 15), but the two categories of workers were compensated differently: unlike employees, independent contractors were not paid overtime, did not have required withholdings applied to their paychecks, and did not receive social security contributions or other benefits. (D. 14 at ¶¶ 10, 17).

Green alleges that PDX and Dealer Tire's use of the CMS form contract "was a substantial

---

[1]Green's amended complaint paraphrases text from the CMS form contract. (D. 14 at ¶ 22). Green also attached a copy of the form contract to his reply brief. (D. 36-1). Although a court resolving a motion to dismiss brought under Rule 12(b)(6) is ordinarily prohibited from looking beyond the four corners of a complaint without converting the motion to dismiss into a Rule 56 motion for summary judgment, "courts have long recognized exceptions for documents the authenticity of which are [sic] not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint.'" Tonneson v. Cambridge Coll., 2011 WL 3798874, at *2 (D. Mass. Aug. 29, 2011) (quoting Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993)). CMS objects to consideration of the CMS form contract, but does not dispute the authenticity of the document attached to Green's brief. (D. 38 at 5-6) The CMS form contract is central to Green's claim and Green refers to the CMS form contract in his amended complaint. (D. 14 at ¶ 22). Accordingly, it is appropriate for the Court to consider the form contract in ruling on the pending motion to dismiss. The Court notes that the text of the contract appears to be consistent with the paraphrased language included in the amended complaint. (D. 14 at ¶ 22, D. 36-1 at ¶¶ 2, 3(a)-(b), 3(e), 16, 22).

factor in the deprivation of [the] rights [of Green and those similarly situated] as employees," and that CMS "knowingly and willfully acted in concert with those companies in accomplishing that deprivation" and "aided and abetted those companies to accomplish that deprivation." (D. 14 at ¶ 22). Green's complaint acknowledges that PDX and Dealer Tire, not CMS, supervised his work, including assigning him work tasks, determining his job details and his driving routes. (D. 14 at ¶¶ 11-12).

## IV. Procedural History

Green filed the instant action on November 15, 2010, alleging among other things that the Defendants violated Massachusetts laws regarding wages, Mass. Gen. L. c. 149, §§ 148, 148B, 150 (Count II) and regarding unfair business practices, Mass Gen. L. c. 93A (Count III) and sought damages against all Defendants and injunctive relief against PDX and Dealer Tire. (D. 1). On January 13, 2011, Green amended his complaint to include in Count II allegations that the Defendants violated not only Massachusetts wage laws but also federal wage laws, 29 U.S.C. §§ 201 et seq., and added a request for injunctive relief against CMS (styled both as a distinct count (Count IV) and as a prayer for relief). (D. 14). CMS subsequently moved pursuant to Fed. R. Civ. P. 12(b)(6)[2] to dismiss the portion of the amended complaint that levies allegations against and seeks

---

[2]CMS' motion is captioned not as a Rule 12(b)(6) Motion to Dismiss but instead as a Rule 12(c) Motion for Judgment on the Pleadings. (D. 32). CMS' subsequent briefs, however, treat the motion as a 12(b)(6) motion and rely exclusively on the legal standards applicable to such motions. (D. 33, D. 38). At oral argument, CMS' counsel repeatedly referred to the motion as a motion to dismiss. (D. 39 at 7, 18, 19). Accordingly, the Court construes CMS' motion as a motion to dismiss pursuant to Rule 12(b)(6). As a general matter,"the two motions are ordinarily accorded much the same treatment" with the "modest difference . . . [that] a Rule 12(c) motion, unlike a Rule 12(b)(6) motion, implicates the pleadings as a whole." Aponte-Torres v. Univ. of P.R., 445 F.3d 50, 54-55 (1st Cir. 2006) (citing 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1368 (3d ed. 2004)). Here, because the sole pleading source of the pertinent facts is Green's amended complaint, the distinction between the two types of motion is of no import.

damages from and injunctive relief against CMS. The Court heard argument on the motion and took the matter under advisement.

## V. Discussion

### A. Count II - CMS May Be Held Liable for Aiding and Abetting Violations of the Massachusetts Wage and Independent Contractor Laws and Federal Fair Labor Standards Act

CMS argues that Count II of Green's amended complaint must be dismissed as to CMS, because, CMS asserts, the amended complaint fails to allege aiding and abetting liability, and even if it did, the statutes Green invokes with regard to Count II - Mass. Gen. L. c. 149, §§ 148, 148B, 150 and 29 U.S.C. §§ 201 *et seq.* - do not provide for aiding and abetting liability.

Contrary to CMS' argument, Green's amended complaint does specifically allege that CMS is liable under an aiding and abetting theory. (D. 14 at 2 ("[t]his Amended Complaint is also submitted against [CMS] for its liability by knowingly and intentionally aiding and abetting PDX and other Massachusetts delivery services companies in misclassifying their truck driver employees as independent contractors . . . [t]he Plaintiff also brings this action against CMS for injunctive relief on behalf of all truck drivers who are employed by delivery services companies in Massachusetts and who are misclassified as "independent contractors" as a result of the aiding and abetting by CMS"); 4 ¶ 4 ("[t]hroughout the United States [CMS] aids and abets delivery services companies similar to PDX in their written contracts of misclassification of truck driver employees as 'independent contractors'"); 8 ¶ 22 ("[t]he use of the contract form of CMS was a substantial factor in the deprivation of Plaintiffs' rights as employees of the delivery services companies. Its use aided and abetted those companies to accomplish that deprivation. CMS knowingly and willfully acted in concert with those companies in accomplishing that deprivation"), 10 ¶ 31 ("[t]he Plaintiff seeks an injunction against CMS prohibiting it from continuing to aid and abet delivery services

companies in Massachusetts to violate state laws in their misclassifications of truck driver employees as independent contractors"), 11 ¶ (f) (asking the Court to "[e]nter an order of injunctive relief against CMS requiring it to cease aiding and abetting misclassifications of truck driver employees by delivery service companies throughout the United States")). Green acknowledges that CMS was not Green's employer and, accordingly, his amended complaint does not allege that CMS is liable under a principal violator theory, and Green acknowledged at oral argument that his claims against CMS rely solely on an aiding and abetting theory. (D. 39 at 11).[3]

Although CMS is correct that the statutory language in question is silent as to aiding and abetting liability, Massachusetts has long recognized the principle that a party may be liable under the common law if it "knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself." Restatement (Second) of Torts § 876(b) (1979); see, e.g., Arcidi v. Nat'l Ass'n of Gov't Emps., Inc., 447 Mass. 616, 623-24 (2006) (relying on § 876 for the definition of aiding and abetting under Massachusetts law); Nelson v. Nason, 343 Mass. 220, 222 (1961) (same); Pathe Computer Control Sys. Corp. v. Kinmont Indus. Inc., 955 F.2d 94, 98 (1st Cir. 1992) (same); Norman v. Brown, Todd & Heyburn, 693 F.Supp. 1259, 1264 (D. Mass. 1988) (same); see also Schultz v. R.I. Hosp. Trust Nat'l Bank, N.A., 94 F.3d 721, 730 (1st Cir. 1996) (citing Spinner v. Nutt, 417 Mass. 549, 556 (1994)) (discussing the "common law cause of action for aiding and abetting"). Here, Green specifically alleges in paragraph 22 of his amended complaint that CMS knew that PDX and Dealer Tire were planning to use the CMS form to deprive Green and other similarly situated of their rights as employees and that CMS both substantially assisted and acted in concert with PDX and Dealer Tire to accomplish

---

[3]The Court notes that the parties have made intermittent references to "civil conspiracy" (D. 36 at 5-6, D. 38 at 1-5, D. 39 at 4, 12-13) that treat this term as interchangeable with "aiding and abetting."

that deprivation, which - assuming the underlying deprivation is sufficient to establish liability against PDX and Dealer Tire - is sufficient to allege a claim of aiding and abetting liability under Massachusetts common law.

CMS' invocation of various statutes that expressly include provisions regarding aiding and abetting liability, D. 33 at 9-10, are inapposite.  Green is relying on a common law theory of aiding and abetting, not on a statutory provision prohibiting a party from aiding and abetting any specific conduct.  (D. 38 at 11).  Accordingly, the issue is not whether the statutes underlying Count II expressly allow aiding and abetting liability, but whether those statutes either expressly prohibit such liability or otherwise dislodge Massachusetts' well-established common law regarding aiding and abetting.  CMS has not pointed to, nor has this Court found, any statutory language or caselaw suggesting that any of the statutes underlying Count II preclude aiding and abetting liability.  Thus, at this stage of the litigation, it would be inappropriate to dismiss Count II with regard to CMS.

**B.    Count III - Green's 93A Claim Against CMS is Valid**

CMS argues that Green's amended complaint fails to state a valid claim against it under Mass. Gen. L. c. 93A, and thus Count III of Green's amended complaint, which relies exclusively on chapter 93A, must be dismissed as it applies to CMS.  Chapter 93A prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Mass. Gen. L. c. 93A, § 2(a).  "A practice is unfair if it is within . . . the penumbra of some common-law, statutory, or other established concept of unfairness; . . . is immoral, unethical, oppressive, or unscrupulous . . . ." Blue Hills Office Park LLC v. J.P. Morgan Chase Bank, 477 F.Supp.2d 366, 376 (D. Mass. 2007) (internal citations and quotations omitted).  To state a valid 93A, section 11 claim, a plaintiff must allege that the defendant participated in "a commercial transaction between a person engaged in trade or commerce and another person engaged in trade or

commerce, such that they were acting in a 'business context.'" Milliken & Co. v. Duro Textiles, LLC, 451 Mass. 547, 563 (2008). CMS argues that Green's complaint fails to satisfy either the "commercial transaction" or the "business context" predicates required by Chapter 93A. The Court disagrees.

As to the former, Green alleges that he signed the CMS form contract under which he was required to pay fees to CMS in return for CMS providing him with services and acting as his "collection agent." (D. 14 at ¶ 22; D. 36-1 at ¶ 3(a)). This "arm's-length transaction between two [entities] under which [one] provided services to [the other] and received compensation" is a commercial transaction for the purposes of a chapter 93A analysis. Linkage Corp. v. Trustees of Boston Univ., 425 Mass. 1, 23 (1997) (discussing in the 93A context an independent contractor's agreement to provide technical services at a Boston University satellite facility).

As to the latter, "[t]he question of whether a private individual's participation in an isolated transaction takes place in a 'business context' must be determined from the circumstances of each case," with the case-by-case inquiry turning on "the nature of the transaction, the character of the parties involved, and the activities engaged in by the parties . . . [as well as] whether similar transactions have been undertaken in the past, whether the transaction is motivated by business or personal reasons (as in the sale of a home), and whether the participant played an active part in the transaction." Begelfer v. Najarian, 381 Mass. 177, 190-91 (1980). Here, given that Green alleges the existence of a commercial transaction between a truck driver and CMS - an organization purporting to provide collection agent services and other business services - motivated solely by business reasons and in which both parties played an active part, and given that the Court must not only take Green's allegations as true but also must draw all reasonable inferences in his favor, the Court concludes that Green has sufficiently alleged that his interactions with CMS arose in a

business context for the purposes of chapter 93A analysis.

CMS argues that Green's interactions with CMS were merely incidental to the alleged employment relationship between Green and PDX. Even if true, this would not undermine the viability of Green's 93A claim against CMS, since a non-party to an employment relationship can be held liable under chapter 93A for aiding and abetting the wrongdoing of a party to an employment relationship regardless of whether the party to the employment relationship can itself be held liable under chapter 93A. Augat, Inc. v. Aegis, Inc., 409 Mass. 165, 172 (1991).

CMS also argues that its conduct, as alleged by Green, cannot be construed as sufficiently unfair to justify 93A liability. The Court disagrees since, if Green's allegations are true and CMS worked in concert with PDX and Dealer Tire to misclassify employees and circumvent the PDX and Dealer Tire's state and federal statutory obligations to their labor force, CMS has clearly engaged in conduct that falls within a "statutory . . . concept of unfairness." Blue Hills Office Park, 477 F.Supp.2d at 376; see Mass. Empl. Ins. Exch. v. Propac-Mass, Inc., 420 Mass. 39, 42-43 (1995) (disfavoring the "'level of rascality' [standard articulated in Quaker State Oil Refining Corp. v. Garrity Oil Co., 884 F.2d 1510, 1513 (1st Cir. 1989) and relied upon by CMS in this case] . . . in deciding questions of unfairness under [chapter] 93A," and instructing courts to focus instead "on the nature of challenged conduct and on the purpose and effect of that conduct as the crucial factors in making a [chapter] 93A fairness determination"). For all of these reasons, Green's amended complaint states a valid 93A claim against CMS.[4]

---

[4]CMS argued at one point that Green's 93A claim must fail because Green did not provide CMS with a demand letter prior to filing this suit. A demand letter is a procedural requirement for 93A claim brought by consumers under § 9 of chapter 93A, but is not required for claims brought in the non-consumer, business-to-business context under § 11 of chapter 93A. Compare Mass. Gen. L. c. 93A § 9(3) with Mass. Gen . L. c. 93 § 11. Although the factual allegations in the amended complaint seemed to be clearly directed towards a § 11 claim, the amended complaint did not explicitly state whether it was relying on § 9 or § 11 of chapter 93A.

9

### C.     Count IV - Injunctive Relief is a Prayer for Relief, Not a Free-Standing Count

Count IV of Green's amended complaint, titled "Claim Against CMS for Injunctive Relief," states that Green "seeks an injunction against CMS prohibiting it from continuing to aid and abet delivery services companies in Massachusetts to violate state laws in their misclassifications of truck driver employees as independent contractors." (D. 14 at ¶ 31).  CMS asserts that this fails to state an independent claim, since, CMS argues, an injunction is not a cause of action but a remedy. (D. 33 at 17).  Green concedes that his request for injunctive relief can be adequately addressed as a prayer for relief rather than a separate, freestanding count and does not object to the Court construing his amended complaint in this manner. (D. 39 at 15).  Accordingly, the Court will refrain from dismissing the two-sentence-long section of Green's amended complaint currently labeled Count IV (D. 14 at ¶¶ 30-31) and will instead construe those two sentences as a prayer for relief rather than as a freestanding count.

---

Counsel for Green stated at oral argument that Green sought to rely only on § 11, not § 9. (D. 39 at 13-14).  Accordingly, it was not necessary for Green to issue a demand letter prior to filing this lawsuit.

## VI.     Conclusion

For the foregoing reasons, CMS' motion under Rule 12(b)(6) to dismiss portions of Green's complaint is DENIED.

**So ordered.**

/s/ Denise J. Casper
United  States  District  Judge